Burket, J.
The Cleveland Dairy and Transportation Company had many creditors, and the action below was brought for and in behalf of all of them, and the exceptions were taken and error prosecuted in the same manner. The defendants in error now claim that as only one creditor, Newton Herrick, has filed a petition in error in this court, all the other creditors are content with the judgments below, and that in case of a reversal, such reversal can correct only the injury which Newton Herrick has sustained, and that no relief can be extended by this court to the other creditors.
This claim is not tenable. Newton Herrick commenced the action in behalf of all the creditors, to *306 collect a fund for the common benefit of all, and the action taken by him in their behalf inures to their benefit, whether taken in the court of common pleas upon his pleadings in that court, or in the circuit court on appeal or error, or in this court. Throughout the whole proceedings in all the courts, the action is for the benefit of all the creditors, and in the absence of fraud or collusion they are all concluded by the final judgment as to the recovery of the fund. Wright v. McCormick, 17 Ohio St., 86; Umsted v. Buskirk, 17 Ohio St., 113; section 3260, Revised Statutes.
The circuit court finds the amount due to each creditor from the company, but renders no judgment in favor of any creditor. The order of distribution of the fund is not a judgment in favor of creditors, but an order upon the receiver to distribute the fund in his hands, whatever the fund may be. The judgment against the stockholders for the amount due from each, is the judgment to be affirmed or reversed in this proceeding in error, and the action as to the amount, is between the plaintiff in his own' behalf, and in behalf of all the creditors, on the one side, and the several stockholders, each for himself, on the other. In this contest the amount of the fund for final distribution may be increased or diminished, but the finding of the court as to who are creditors, and the amount due to each, will not thereby be affected, and therefore the several creditors are neither necessary, or proper parties to such proceedings in error. Whatever the final fund for distribution may be, the order of the court for its distribution among the creditors pro rata, will stand unaffected by the result of the proceedings in error. If the plaintiff in error should succeed, and increase the *307 fund, the rate per cent, to each creditor would be increased, and in case of failure it might be diminished, or remain the same; but the order to distribute the fund, whether increased, diminished or remaining the same, would stand unreversed and unaffected by the result of this proceeding in error. The reversal here sought is only as to the amounts to be paid by the three stockholders, Wardwell, Whitacre and Kies, and to reverse or modify the judgment of the circuit court as to them, does not in the least affect any judgment rendered for or against creditors, and therefore the creditors should not be made parties to this petition in error.
In such cases against stockholders the names of the creditors and the amount due to each from the corporation, are usually ascertained by a reference to a master or referee, notice being published by order of the court for creditors to present their claims. In case of a contested claim, an issue should be ordered to be made up and tried to ascertain and fix the amount due to the creditor from the corporation. While the issue and trial as to such contested claim is a proceeding in the case, it is distinct from the proceedings against the stockholders, the one being to establish the validity of a creditor’s claim against the company, and the other to collect a fund from the stockholders for the common benefit of all the creditors.
In the next place it is claimed by defendants in error, that the milk contracts were not binding obligations, were so indefinite as to be void, and lack the element of mutuality.
The producer of milk agreed to sell to the corporation all the milk which he should produce, and the corporation agreed to pay him for all the milk *308 shipped from April 1, 1892, to May 1, 1893, at the prices named in the contract.
While the producer is not bound to produce any certain quantity of milk, unless it may be twenty gallons per day, the corporation is bound to pay for all the milk shipped, the prices named in the contract. After performance by the producer, the corporation cannot avoid its obligation by pleading that the producer was not bound to perform the contract. The option to produce milk and thereby perform his contract was for the benefit of the producer, and when milk was produced and shipped, the obligation of the corporation to pay for it was binding, and the contract between the parties was then both definite and mutual.
The production and shipment of milk continued until the corporation made an assignment, December 15, 1892, and thereafter for the first time an attempt was made to take advantage of the weakness of these milk contracts. It was then too late. Performance by the producers without objection by the corporation, or its officers or stockholders, had then cured whatever weakness there may have been in the contracts. Fishmonger's Company v. Robertson, 5 Man. & G., 131; Phelps v. Townsend, 8 Pick., 392; Commercial Bank v. Nolan, 7 How. (Miss.), 518; 1 Parsons on Contracts, 451; Stahl v. Van Vleck, 53 Ohio St., 136; Himrod Furnace Co. v. Cleveland & Mahoning R. R. Co., 22 Ohio St., 451.
Next it is urged by defendants in error that the debts for milk delivered under the contracts, accrued, not at the date of the execution of contracts but at the time of the delivery of the milk.
The language of the Constitution, Article XIII, section 3, is as follows: “Dues from the corpora *309 tion shall be secured by such individual liability of the stockholders, and other means, as may be prescribed by law; but in all cases each stockholder shall be liable over and above the stock by him or her owned, and any amount unpaid thereon, to a further sum, at least equal in amount to such stock.”
Section 3258 of the Revised Statutes of Ohio reads as follows: “The stockholders of a corporation which may be hereafter formed, and such stockholders as are now liable under former statutes, shall be deemed and held liable, in addition to their stock, in an amount equal to the stock by them subscribed, or otherwise acquired, to the creditors of the corporation, to secure the payment of the debts and liabilities of the corporation.”
Stockholders are liable to secure the payment of the “dues” from corporations, as well as the “debts and liabilities” thereof. The liabilities mentioned in the statute are to the “creditors” of the corporation, but in the constitution “creditors” are not named. The word ‘ ‘creditor” cannot have the effect to limit, or narrow the words “dues, debts and liabilities.” Whoever has a claim against a corporation which falls within the terms, “dues, debts or liabilities,” is a creditor of such corporation within the .meaning of the constitution and statute under consideration.
When the corporation executed these milk contracts, it thereby incurred a liability to pay for all the milk which should be shipped under said contracts. Whether an end could have been put to this liability by the corporation before the expiration of the time limited in such contracts, we need not now inquire. It is enough to say that no *310 attempt was made to avoid the contracts, and that the shipment of milk continued under the contracts until the corporation made an assignment. The liability on the contracts for the debts arising from the delivery of milk thereunder, therefore accrued at the time of the signing of the contracts, and under the authority of Brown v. Hitchcock, 36 Ohio St., 667, the defendants in error remained liable on their stock for the milk shipped after they assigned their stock to insolvent persons. But the defendants in error are liable also upon another ground, even though, it be conceded that the debts or liabilities for milk did not accrue until the delivery of the milk. It is conceded that they were stockholders when the milk contracts were made, that they continued to hold their stock until late in August, 1892, that no stock book showing transfers was kept, that the only record kept of the issuing of stock was the entry on the stubs left after removing’ the stock certificates, and that while the stubs of the new certificates issued to the purchasers of this stock showed from whom the stock was received, the stubs of the certificates issued to the defendants in error did not show that said stock had been sold or transferred.
As there was no regular stock book showing transfers kept by the company, the stock certificate book and stubs were made to take its place, and upon these stubs and upon the stock subscription book, the names of these defendants in error stood as stockholders; and it is well settled that all whose names so stand upon the stock book, are liable as stockholders to those dealing with the corporation, until the stock book shows that such stock has been transferred, or disposed of in some other way.
*311 It, is urged in behalf of defendants in error that as the stubs of the stock issued to the purchasers thereof showed that the stock was received from the defendants in error, such stubs were notice to the world that, such defendants were no longer stockholders, even though the stubs of the original issue of the stock to them still showed defendants in error to be stockholders, and nothing appeared on those stubs to show a transfer of their stock. This claim is not sound.
By section 3254, Revised Statutes, it is provided that a book shall be kept by the corporation for the purpose of registering therein all subscriptions and transfers of stock, and it is made the duty of the directors to keep such record, and of the secretary to register in such book all subscriptions and transfers of stock; and it is further provided that whenever any certificates of stock are assigned and delivered by a stockholder, the assignee thereof shall be entitled to have the stock transferred to him upon the books and to have his name enrolled as a stockholder.
It is not the assignment and delivery of the certificates of stock, that relieves the stockholder trom liability for the debts of the corporation, under this section, but the transfer of the stock on the books; because after such transfer the old stockholder no longer stands as a stockholder on the books of the company. The stock book is notice to the world as to who are the stockholders of the corporation, and the statute has provided how the book and transfers shall be kept, and this provision is for the protection of the public, and to inform stockholders as to their liability, and how and when an end may be put to such liability.
If this corporation had kept a stock book show *312 ing transfers, and these defendants in error had caused their stock to be transferred on such book, they could not be held liable for debts thereafter incurred. Instead of obeying the statute in this regard, they resorted to the practice of keeping the stock account and tranfers on the stubs, supposing that to be as good as a regular stock book. In this they were mistaken. A stock book would have shown the subscription and transfer in the same account, but the stubs of the old certificates showed only that the stock had been issued, and failed to show that it had been transferred. True, the stub of the new certificate showed from whom the stock came, but the stub of the old certificate failed to show where the stock had gone, or that it had been transferred at all. The whole stub book taken together might have shown the transfer of this stock, but the public cannot be put off with less than the statute gives them. An ordinary man, like a producer of milk, would not likely look further than to find the names of these defendants in error upon the stock subscription list and old stubs, and would not carefully go through the book, and check up the stock to see whether any of the stock appearing on the stubs had been transferred, and he should not be required to do so. If the old stubs had shown that the stock had been transferred, there would be something to support the claims of the defendants in error, but as it is, they clearly stand on the old stubs and subscription list as stockholders, and therefore liable for the debts arising from the delivery of milk, up to the date of the assignment made by the corporation.
The statute having prescribed the manner of keeping the record of the subscription and transfer of stock, a different'method will not be upheld, un *313 less it is shown to be equally as good and convenient as the one provided by statute. Stockholders cannot escape liability by pursuing a course different from that provided by statute, and which imposes additional burdens upon the public, or makes it more difficult to ascertain who the stockholders are. The public has a right to rely upon the statute, and are entitled to its provisions, or its full equivalent.
It follows that the circuit court erred in not rendering judgment against the defendants in error for an amount equal to the amount of their stock. The judgment of the circuit court will be modified by rendering judgment against the defendants in error for the remainder of their liability.

Judgment acoordingl/y.